(C.D. 2552)

EASTERN DIAMOND PRODUCTS COMPANY, INC. *v.* UNITED STATES
(J. E. BERNARD & Co., INC., PARTY IN INTEREST)

United States Customs Court, Third Division

(Decided June 30, 1965)

*Busby & Rivkin* (*Saul L. Sherman* and *David Busby* of counsel) for the plaintiff.

*Andrew P. Vance*, Chief, Customs Section, Civil Division (*Glenn E. Harris*, trial attorney), for the defendant.

No attorney for party in interest.

*Barnes, Richardson & Colburn* (*James H. Lundquist* and *E. Thomas Honey* of counsel) as *amicus curiae.*

Before DONLON, RICHARDSON, and FORD, Judges; DONLON, J., dissenting

RICHARDSON, Judge: This is a protest proceeding which was filed by the plaintiff under the provisions of 19 U.S.C.A., section 1516 (section 516, Tariff Act of 1930, as amended), as an alleged American wholesaler, to review the collector's classification of merchandise imported at Chicago, Ill., from Ireland by the party in interest. The merchandise of the subject importation consists of 2,000 carats of synthetically produced diamond particles in various size ranges from 60/80 mesh up to and including 270/325 mesh. The merchandise was classified in liquidation under 19 U.S.C.A., section 1001, paragraph 214 (paragraph 214, Tariff Act of 1930), as modified by T.D. 51802, as an earthy or mineral substance, wholly or partly manufactured, and assessed with duty at the rate of 15 per centum ad valorem.

It is claimed by the plaintiff that the merchandise should be classified under the duty-free provision for "diamond dust" in 19 U.S.C.A., section 1201, paragraph 1668 (paragraph 1668, Tariff Act of 1930), or, alternatively, under either the duty-free provision for "crude artificial abrasives" in 19 U.S.C.A., section 1201, paragraph 1672 (paragraph 1672, Tariff Act of 1930) or the dutiable provision for "artificial abrasives" in 19 U.S.C.A., section 1001, paragraph 1514 (paragraph 1514, Tariff Act of 1930), as modified by T.D. 52739, at a duty rate of ½ cent per pound.

The issue in this protest proceeding is substantially the same as the issue in the companion case of *Diamond Tool Research Co., Inc.* v. *United States*, 55 Cust. Ct. 37, C.D. 2551, except that, in the instant case, plaintiff has limited its claim to being only an "American * * * wholesaler" within the meaning of section 1516, which status is challenged by the defendant.

The sole witness who gave testimony on this issue was Mrs. Claire Chase, secretary and a director of the plaintiff company. She testified, among other things, that the plaintiff was incorporated in the State of New Jersey, and that the stock of the corporation is owned by American citizens, most of it being owned by her brother, William Mullins, who is also its president, and the remaining few shares being owned by her (Mrs. Chase) and Mrs. Mullins. She stated that she has been in the diamond business for 14 years, that her duties for the plaintiff include buying and selling diamond dust, preparing shipments, keeping the books and inventory and "practically almost everything in the office except maybe the larger decisions that Mr. Mullins makes."

Mrs. Chase testified that in the terminology of the trade a wholesaler of diamond dust is one who buys and resells diamond dust with-

out processing it, usually only weighing and repacking; that wholesalers sell either to wheelmakers or to other wholesalers who, in turn, eventually resell to wheelmakers; and that wholesalers sell diamond dust in quantities ranging from about 50 carats to thousands of carats. With respect to sales of synthetic diamond dust, made by the plaintiff, the witness testified that a sale had been made in February 1962 of about 500 carats, and that, prior to February 1962, four or five small sales had been made. And with respect to the origin of the merchandise sold by plaintiff during the period January 1962 through August 1963, Mrs. Chase testified that the plaintiff did not sell any diamond dust which was made in the United States because it could not purchase any at a price which would enable it to make a profit upon resale, and that all industrial diamond products plaintiff sold during this period were products which originated abroad, although not imported by plaintiff.

On this evidence, the question before the court is, does plaintiff qualify as an "American * * * wholesaler" of diamond dust so as to entitle it to file a protest under section 1516? We think not. Without having to determine whether or not plaintiff's dealings are sufficiently developed in the evidence to bring it within the provisions of section 1516, its admitted activities, that is, dealing only in foreign merchandise, disqualify it from seeking relief under that statute. With respect to the class of persons described in section 1516 as "American * * * wholesaler," the statute is applicable only to wholesalers of domestically produced or manufactured merchandise of the same class or kind as imported merchandise.

The word "American" which appears in section 1516 does not modify and limit the person. An examination of the legislative history of the statute confirms this conclusion. Intervention in customs litigation by manufacturers and producers and wholesalers *per se* had never been permitted in the history of our tariff legislation prior to the 1922 tariff act provision in section 516 which was the predecessor of section 516 of the 1930 act. The reason underlying such a major change in our domestic tariff policy is embedded in the reports of the 67th Congress, particularly the House Ways and Means Committee report on H.R. 7456, the proposed bill on general tariff revision as it was introduced in the House in 1921. The language of section 529* of that bill as introduced in the House read as follows:

Sec. 529. APPEAL OR PROTEST BY AMERICAN PRODUCERS.

Whenever it shall appear to the satisfaction of a board of three General Apraisers that it is impracticable for a manufacturer or producer in the United States to make, in his own name, or by agent, an importation of merchandise for the purpose of having determined the dutiable value or classification thereof,

---

*S. Doc. 187, 67th Cong., 2d sess., p. 151.

such manufacturer or producer shall have the right to appear and to be heard as a party in any case involving the disputed question of fact or law; or, in the absence of such a case, the manufacturer or producer, or the Assistant Attorney General in charge of customs litigation for the Government, may state in a written notice to the appraiser or the collector what he claims to be the proper value or classification, as the case may be, of such merchandise, and if the appraiser or the collector shall not accept such valuation or classification as correct, such manufacturer, producer, or Assistant Attorney General shall have the right to appeal for reappraisement or to make a protest, and to be heard as a party, the same as the importer would have, in any subsequent appraisal or classification involving the same question of fact or law. No manufacturer or producer shall have the right to inspect any documents or papers disclosing any information which the General Appraiser or the board of three General Appraisers shall deem improper to be disclosed to him. In every such proceeding the importer or his agent shall be notified by the manufacturer, producer, or Assistant Attorney General, whichever is the moving party, of his intention to appear and shall be apprised of all hearings in accordance with the rules of procedure.

In reporting favorably on H.R. 7456 and recommending its adoption, the majority report of the Committee on Ways and Means revealed the reason for the general tariff revision encompassed in the proposed bill.** Among other things, the report states (p. 21):

The necessity for this remedial legislation is accentuated by after-war conditions which have resulted in the depreciation in the value of the currency of the nations of Europe in general. The effect of depreciated currency has been to reduce production costs in many countries with whose products *American goods* must compete. It is against these countries that protection is most needed. [Italics added.]

In commenting upon the language of section 529 of the bill in particular, the report goes on to say (p. 26):

The right of protest against the rate or amount of duty as being too low, which was in the law prior to 1913, has been restored and extended to give American manufacturers and producers an opportunity to be heard upon matters of value and classification of imported merchandise directly affecting their interests.

Section 529 of H.R. 7456, as drafted by the House and sent to the Senate, was amended by the Senate which substituted its own version of the statute for the House version under a new section 516. In proposing the amendment, the Senate had no quarrel with the House concerning reasons for and objectives underlying the proposed legislation. The Senate took the position that the provisions of the House section 529 were susceptible of doubtful interpretation, and that its own section 516 provided a more detailed and practical method of getting the facts before the appraising officers, and assured a proper notice to opposing parties and the privacy of documents and papers.*** In addition, the Senate amendment also extended the privilege of inter-

---

**H. Rept. 248. 67th Cong., 1st sess., pt. 1.
***H. Repts. 1207, 1223, 67th Cong., 2d sess., p. 157.

vention in customs litigation to American wholesalers. The House acquiesced in the Senate amendment and the provisions thereof became law as written into the Tariff Act of 1922. The pertinent provisions of section 516 of that act read as follows:

(b) The Secretary of the Treasury shall, upon written request by an American manufacturer, producer, or wholesaler, furnish the classification of and the rate of duty, if any, imposed upon designated imported merchandise of a class or kind manufactured, produced, or sold at wholesale by him. If such manufacturer, producer, or wholesaler believes that the proper rate of duty is not being assessed, he may file a complaint with the Secretary of the Treasury setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief. If the Secretary believes that the classification of or rate of duty assessed upon the merchandise is not correct, he shall notify the collectors as to the proper classification and rate of duty and shall so inform such manufacturer, producer, or wholesaler, and such rate of duty shall be assessed upon all merchandise imported or withdrawn from warehouse after thirty days after the date of such notice to the collectors. If the Secretary believes that the classification and rate of duty are correct, he shall so inform such manufacturer, producer, or wholesaler. If dissatisfied with the action of the Secretary, such manufacturer, producer, or wholesaler may file with him a notice that he desires to protest the classification or the rate of duty imposed upon the merchandise, and upon receipt of such notice the Secretary shall furnish him with such information as to the entry, the consignee, and the port of entry as will enable him to protest the classification of or the rate of duty imposed upon the merchandise when liquidated at any port of entry. Upon written request therefor by such manufacturer, producer, or wholesaler, the collector of such port of entry shall notify him immediately of the date of liquidation. Such manufacturer, producer, or wholesaler may file, within sixty days after the date of liquidation, with the collector of such port a protest in writing setting forth a description of the merchandise and the classification and the rate of duty he believes proper, with the same effect as a protest of a consignee filed under the provisions of sections 514 and 515 of this Act.

(c) A copy of * * * every protest filed by an American manufacturer, producer, or wholesaler under the provisions of this section shall be mailed by the collector to the consignee or his agent within five days after the filing thereof, and such consignee or his agent shall have the right to appear and to be heard as a party in interest before the Board of General Appraisers. The collector shall transmit the entry and all papers and exhibits accompanying or connected therewith to the Board of General Appraisers for due assignment and determination of * * * the proper classification and rate of duty. The decision of the Board of General Appraisers upon any such * * * protest shall be final and conclusive upon all parties unless an appeal is taken by either party to the Court of Customs Appeals, as provided in section * * * 515 of this Act.

(d) In proceedings instituted under the provisions of this section an American manufacturer, producer, or wholesaler shall not have the right to inspect any documents or papers of the consignee or importer disclosing any information which * * * the Board of General Appraisers shall deem unnecessary or improper to be disclosed to him.

Section 516 of the Tariff Act of 1922 was superseded by similar provisions of section 516 of the Tariff Act of 1930, and repealed by sec-

tion 651(a)(1) of the 1930 act. It is the provisions of 19 U.S.C.A., section 1516 (section 516, Tariff Act of 1930, as amended), as previously indicated herein which govern the instant protest proceeding.

It is clear from the legislative history of the statute that the expression "American manufacturer or producer" did not originate in the Senate, but was first used in the House to characterize language employed by the House in its section 529 in the words "a manufacturer or producer in the United States." In other words, House usage of the expression "American manufacturer or producer" was but a paraphrase for its statutory proposal in the words "a manufacturer or producer in the United States." And the Senate adopted the House paraphrasing in rewriting the provisions of section 529, and enlarged the expression to include the words "American * * * wholesaler." But because as aforesaid the Senate did not reject section 529 for reasons relating to the objectives sought to be served by its provisions, but rejected it because of projected difficulties of interpretation, the true meaning of the words "American manufacturer, producer, or wholesaler" must be ascertained from the House usage and origination of the major portion of the expression.

The House was concerned with the welfare of *American goods* in their competitive relationship with foreign imports, and undertook to empower the creators of *American goods* to seek to improve their competitive relationship with foreign goods of like kind by means of regulated intervention in customs administration and litigation. And this concern for *American goods* is identified with the House usage of the words *a manufacturer or producer in the United States* in section 529. In this context, the place of incorporation is a factor, but is not determinative of the right to pursue a section 1516 protest. The test is whether the complainant is a manufacturer, producer, or wholesaler of *American goods*.

The concern for *American goods* did not diminish or change as section 529 of H.R. 7456 moved through both Houses of Congress and the conference committees to be finally enacted into law as section 516 of the Tariff Act of 1922. What changed while the bill was enroute was the concept of thinking only in terms of providing protection for the creators of *American goods* (manufacturers or producers), to thinking in terms of providing protection for the distributors of *American goods* (wholesalers) as well, and the fashioning of more precise statutory language to achieve these aims. Consequently, any construction of section 1516 which tends to read the concept of *American goods* out of the language "American * * * wholesaler" does not comport with the legislative purpose underlying the statute. This is not to say that one may not be deemed to be an "American * * * wholesaler" within the meaning of section 1516 unless he deals ex-

clusively in American merchandise. But the extent to which one can properly be deemed to be an "American * * * wholesaler" under the statute must be measured by his dealings in *American goods*, irrespective of whatever else he may handle. In any case, plaintiff has failed to bring itself within the provisions of section 1516 by its admission at the outset that it deals exclusively in imported merchandise.

The case of *Mayers, Osterwald & Muhlfeld (Inc.)* v. *E. F. Bendler and United States*, 18 CCPA 117, T.D. 44093, while it deals with "an American wholesaler and dealer in diamonds, pearls, and other precious stones," furnishes no occasion to take judicial notice that diamonds of gem quality are not an article that is produced in the United States. Diamonds are not raised to gem quality simply by being unearthed, whether in this country or abroad. A great deal of work is required to produce a sparkling diamond of gem quality, as the history of the Nassak diamond referred to in the cited case can attest. Much of such work is carried on right here in this country, and has been for years in an industry devoted to producing diamonds of gem quality. (See Kunz, Gems and Precious Stones of North America, 2d ed. [1892], pp. 313–317; vol. 9, Encyclopedia Americana [1953], p. 62.) And inasmuch as the question here raised was not presented or considered in the cited case, the court should not speculate on the nature and extent of the business activities carried on by the wholesaler in that case.

For the reasons stated herein, plaintiff has not established itself to be an "American * * * wholesaler" within the meaning of section 1516, and, as such, is not entitled to invoke the remedies provided for in that statute. It, therefore, becomes unnecessary to consider other jurisdictional and classification issues presented in the case. The protest is overruled.

Judgment will be entered accordingly.

### DISSENTING OPINION

DONLON, Judge: I do not concur with my learned colleagues that plaintiff has not made at least a *prima facie* showing that it is an American wholesaler and qualified as such, under section 516(b), to sue on this protest.

In our consideration we have the benefit not only of briefs filed by plaintiff and defendant, but also of an extensive brief filed as *amicus curiae* by counsel for General Electric Company, sole producer of synthetic diamond dust in the United States.

In its brief, defendant concedes that plaintiff is a *bona fide* wholesaler of diamond dust, even though it is what defendant calls a "small" wholesaler. I find nothing in the statute that limits the protection of section 516(b) to big business. Defendant's position is well taken, on

the record before us, that plaintiff is a wholesaler in the United States of diamond dust. I do not find anything, on the facts or in the law, that persuades me, as the majority are persuaded, that plaintiff is not an *American* wholesaler of diamond dust.

The facts as to plaintiff's business seem to me not quite accurately described by the majority, when they state that plaintiff's witness, Mrs. Chase, "testified that the plaintiff did not sell any diamond dust which was made in the United States * * *." I do not so read the record. What she said was that plaintiff did not sell any *synthetic* diamond dust made in the United States.

Testifying for plaintiff, Mrs. Claire Chase, secretary and a director of plaintiff corporation, stated that plaintiff *did not import any diamond dust;* that it *now* sells at wholesale only natural diamond dust; that natural diamond dust is of "foreign origin"; that plaintiff also sold at wholesale synthetic diamond dust until, in 1962, the administrative change in tariff classification (which is here protested) made it unprofitable to continue selling synthetic diamond dust at wholesale; that since this administrative action, plaintiff has sold only natural diamond dust in its wholesale business; that it could not purchase domestic synthetic diamond dust because General Electric Company, the only domestic producer, distributed its product at wholesale through a sole authorized representative; and that this exclusive sales arrangement of General Electric precluded plaintiff from doing business at a profit in wholesale selling of domestic synthetic diamond dust.

Mrs. Chase stated, and reiterated, that plaintiff does not import diamond dust; and, also, that it buys its diamond dust from Engelhard Hanovia, Inc., plaintiff in the incorporated case.

In their discussion of the decision of our appeals court in *Mayers, Osterwald & Muhlfeld (Inc.)* v. *E. F. Bendler and United States,* 18 CCPA 117, T.D. 44093, the majority seem to say that the grinding and polishing, within the United States, of imported diamonds of gem quality was found to make such diamonds American goods. I agree.

What I fail to follow is the distinction the majority seem to make, both in *Diamond Tool Research Co., Inc.* v. *United States,* 55 Cust. Ct. 37, C.D. 2551, and here, when that which is produced or sold in the United States is industrial diamond particles ground or reclaimed in the United States from diamond bort of foreign origin, produced to exacting industrial user specifications and graded, offered for sale, and sold as such. To my view, although equally of foreign origin as are gem diamonds, diamond particles before us in *Diamond Tool Research, supra,* in *Mullins Industrial Diamond Corporation* v. *United States,* 55 Cust. Ct. 72, C.D. 2553 (protest 63/15538), also decided today, and in this case, are goods that have entered the trade and

commerce of the United States, so that the manufacture, production, or selling of them at wholesale within the United States, is a business described in section 516(b).

*Mayers*, as an American wholesaler of gem diamonds, would have been without opportunity to be heard in a matter directly affecting his interest, if our appeals court had held that Congress intended that an American wholesaler of gem diamonds of "foreign origin" did not meet the jurisdictional specification of section 516(b).

Similarly, plaintiff here is denied by the majority an opportunity to protest classification in a matter shown to affect directly his business interest, because the diamond dust he bought and sold within the United States was of "foreign origin." We have found that the protested classification is, indeed, erroneous.

Defendant's position is that plaintiff "cannot conceivably have any immediate 'economic interest' in the relief they seek" because the record establishes that their business is "the wholesaling of *natural diamond grit and natural diamond dust*, which plaintiffs concede to be products *in competition with* synthetic diamond grit in a range of significant uses. Simply put, what plaintiffs seek in these proceedings is to remove all or practically all duty on a product which they claim is fiercely competitive with the one in which they deal, and by no stretch of the imagination is there to be found any proximate relationship between plaintiffs' 'economic interest' and such relief." (Defendant brief, pp. 18, 19; emphasis copied.)

Defendant has not rebutted the testimony of record as to the competitive damage to plaintiff's business that results from the erroneous classification of synthetic diamond dust. This argument on the part of defendant is unsupported by the facts of record. The evidence of economic interest is before us.

My colleagues say that "House usage of the expression 'American manufacturer or producer' was but a paraphrase for its statutory proposal in the words 'a manufacturer or producer *in the United States*.' And the Senate adopted the House paraphrasing in rewriting the provisions of section 529, and enlarged the expression to include the words 'American * * * wholesaler.'" [Emphasis added.] This statement accords with my own opinion, as I stated it in *Diamond Tool Research Co., Inc.* v. *United States*, *supra*, namely, that it is the *American business*, whether it be that of manufacturing or producing or wholesaling, to which Congress extended the protection afforded by the provisions of section 516(b).

I do not follow my colleagues when, proceeding from that base, they find that plaintiff has the burden of showing that, in carrying on an American business of manufacturing or producing or selling at whole-

sale, it does not use goods of "foreign origin," or only some undefined quantity of goods of "foreign origin." To write this requirement into section 516 (b) is judicial legislation. It distorts the very concept the majority expressed of what is a manufacturer or producer or wholesaler in the United States, namely, one engaged in such business in the United States, so as to exclude certain such manufacturers, producers, and wholesalers, without any statutory language thus delimiting the class.

The interpretation of a statute which preserves its usefulness to fulfill the legislative purpose is to be preferred to a construction which does not. *United States* v. *Peter Kiewit Sons Company of Canada, Ltd.*, 195 F. Supp. 752.

I do not here discuss the reasons for my finding that the merchandise which plaintiff sells in the United States at wholesale is merchandise of the same class or kind as the protested merchandise, and that the protested classification is improper. My reasons for both findings are stated in my opinion in *Diamond Tool Research Co., Inc.* v. *United States, supra,* decided today.

I dismiss the argument of *amicus*, which defendant does not argue, that plaintiff, by this protest, is attempting to do indirectly what it cannot do directly. That is not so. There is here no indirect attempt to do something. To the contrary, this is a protest filed directly under authority of a statute.

If plaintiff is an American wholesaler of merchandise, of the same class or kind as the imported merchandise, having a section 516 (b) right to protest classification, and I find that plaintiff is; and if the protested classification is erroneous, and we have found that it is; then Congress, in section 202 of the Tariff Classification Act of 1962, P.L. 87–456, 76 Stat. 72, provided that such a plaintiff should be relieved of the continuing burden of the incorrect classification.

It is a novel thought which *amicus* urges on us, that those who act directly in conformity with the provisions of a statute, suitable to the attainment of benefits in their situation which Congress has expressly provided, should be cut off from those benefits if in some other situation and proceeding under other statutory provisions, they would not be entitled to like relief.

I do not repeat here a discussion of cases, cited by the parties, which were discussed either in the incorporated case or in *Diamond Tool Research Co., Inc., supra.* All arguments and all cited authorities I have fully considered.

The protest claim to classification under paragraph 1668 should be sustained. The other protest claims should be dismissed.